IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.     18-cr-00181-REB-GPG

UNITED STATES OF AMERICA,

       Plaintiff,

v.

ARDEN CHARLES POST,

       Defendant.

---

## MOTION FOR RELEASE PENDING SENTENCING

---

Mr. Arden Post, through his counsel Mary V. Butterton, respectfully moves this Court to revoke the detention order entered on September 24, 2019 and release Mr. Post on conditions pending his sentencing hearing set for June 8, 2020. Docs. 12, 13. Mr. Post suffers from Type 2 diabetes, a condition that makes him particularly susceptible to exposure and death from COVID-19; this virus can be deadly and is subject to increased spread in detention facilities. As there is clear and convincing evidence that he is not a flight risk nor a danger to the community, Mr. Post respectfully requests his release pending his sentencing hearing pursuant to 18 U.S.C. §§ 3143(a) and 3145(b).

Undersigned counsel has conferred with Assistant United States Attorney Riley Player; he opposes the relief requested in this motion.

## PROCEDURAL HISTORY

1.    In April 2018, Mr. Post was indicted by a federal grand jury with one count of a violation of 18 U.S.C. § 922(g), possession of a firearm by a previous offender. Doc. 1. This indictment was brought out of conduct that occurred on December 30, 2017. *Id.*

2.      In August 2019, Mr. Post was arrested in the Eastern District of Washington and was returned to the District of Colorado following Rule 5 proceedings. Doc. 5. Mr. Post first appeared in Colorado on August 24, 2019; he did not contest detention and was ordered detained. Docs. 9, 12. Since that time, he has been held at the LaPlata County Jail in Durango, Colorado. Doc. 31 (Presentence Investigation Report) at ¶ 4.

3.      On December 9, 2020, Mr. Post entered a plea of guilty to the single count of the indictment. Doc. 27. His sentencing was originally set for April 14, 2020; the hearing has been reset for June 8, 2020. Docs. 27, 33.

## OTHER RELEVANT FACTS

4.      Mr. Post is 58 years old and suffers from several serious health conditions, including Type II diabetes.  This condition was well-documented in Mr. Post's Presentence Investigation Report. Doc 31 at ¶ 74.

5.      The United States is currently in the throes of a global pandemic of COVID-19, a strain of coronavirus.[1] As of the morning of April 2, 2020, the United States has 234,483 reported cases of coronavirus,[2] and at least 5,708 people have died.[3]  Due to serious limitations in testing, the reported cases likely represent only a small fraction of the actual number of infected persons. Further, both the number of reported cases and number of deaths are increasing exponentially, and hundreds of thousands are expected to die in the United States. There is no known cure or vaccine for COVID-19. Medical experts around the world have repeatedly and

---

[1] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[2] *Coronavirus in the U.S.: Latest Map and Case Count*, The New York Times https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (updated regularly).
[3] *4,127 people have died from coronavirus in the U.S.*, The Washington Post, https://www.washingtonpost.com/graphics/2020/national/coronavirus-us-cases-deaths/ (updated regularly).

unanimously stated that the most effective way to avoid contracting the virus is to practice "social distancing" by avoiding coming within six feet of other people, including those who show no symptoms of illness. Because of those recommendations, government officials throughout the world have ordered people to stay home with exceptions only for essential activities.

6.      As of March 30, 2020, LaPlata County, Colorado had 23 confirmed cases of COVID-19.[4]

7.      The CDC states that people with diabetes (among other underlying medical conditions) are at high-risk for severe illness from COVID-19.[5]  As a person who suffers from this condition, Mr. Post is more likely to suffer severe symptoms and death from COVID-19 while in custody. If he contracts COVID-19, he risks infecting other inmates and prison staff.

8.      Conditions of confinement in jails and prisons make it virtually impossible for prisoners to protect themselves from a spreading contagion.[6] According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[7]

---

[4] *"How many COVID-19 tests have been done in LaPlata County? Local health officials don't know"* The Durango Herald (March 20, 2020) at https://durangoherald.com/articles/319867.

[5] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fhigh-risk-complications.html ("People who are at higher risk for severe illness"), last accessed March 31, 2020.

[6] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[7] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

9.      As of April 2, 2020, the Bureau of Prisons reported 75 inmates and 39 staff members have fallen ill with the virus.[8]  However, the BOP's inmate and staff screening protocols do not include testing for COVID-19, and the country continues to experience a devastating shortage of tests and lengthy delays in receiving results. For these reasons, BOP reports regarding confirmed positive tests, like all such reports, *underrepresent* the number of people that have the virus, likely by significant amounts.[9] BOP's own staff have described the federal prison and detention system as "underprepared for the crisis and already on the brink of disaster."[10] Descriptions of conditions in BOP facilities around the country corroborate this bleak assessment.[11] Symptomatic inmates in BOP facilities with confirmed cases are not being tested, quarantined or treated, at least one facility is still placing inmates in groups of 250 for recreation, and a New York facility ran out of soap in the staff restroom. *Id.*

10.     On March 28, 2020, Patrick Jones, a 49-year old male inmate at FCI Oakdale, died of COVID-19. *See* BOP Press Release, attached as Ex. A. Like Mr. Post, Mr. Jones had "preexisting medical conditions which the CDC lists as risk factors for developing more severe COVID-19 disease." *Id.* Mr. Jones required a ventilator within one day of reporting symptoms. Only ten days elapsed between Mr. Jones' initial report of a cough and his death. *Id.*

---

[8] *See* https://www.bop.gov/coronavirus/ (COVID-19 Tested Positive Cases) (updated by the BOP daily at 3:00 p.m.)

[9] *State Asks Hospitals Not to Release Coronavirus Testing Totals*, Boston Business Journal (March 20, 2020), https://www.bizjournals.com/boston/news/2020/03/20/state-asks-hospitals-not-to-release-coronavirus.html ("...under-reporting is on top of testing shortages, which have limited tests only to patients who are symptomatic.").

[10] *Sick Staff, Inmate Transfers, and No Tests: How the U.S. is Failing Federal Inmates as Coronavirus Hits*, Keegan Hamilton, Vice News (March 24, 2020), https://www.vice.com/en_us/article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits.

[11] *Federal Prisons Struggle to Combat COVID-19 Fears*, Associated Press (March 27, 2020), https://www.usnews.com/news/health-news/articles/2020-03-27/federal-prisons-struggle-to-combat-growing-covid-19-fears.

11.     On March 27, 2020, hundreds of former D.O.J. leaders, lawyers, federal judges, and federal prosecutors signed a letter to the president urging him to sensibly commute sentences and limit new detentions in order to mitigate the spread of COVID-19 in federal jails and prisons. Ex. B. The authors of this letter stated:

> …we urge you to…commute sentences for the medically vulnerable population unless there is clear evidence that release would present a serious and demonstrable risk to public safety. The WHO advises that persons suffering from cardiovascular disease, diabetes, chronic respiratory disease, asthma, or cancer are at heightened risk…. Almost 40% of individuals in corrections and detention settings have underlying health conditions and it is crucial that we take steps proactively to ensure their safety and release from densely populated correctional facilities.

> *Id.*, at pp2-3 (footnotes omitted).

12.     If released on condition of bond, Mr. Post would live with his cousin, Lena Nez, at 1024 Sundance Drive in Towaoc, Colorado. As of the date of this filing, Montezuma County has reported no cases of COVID-19.[12]

## LEGAL AUTHORITY AND ARGUMENT

13.     Mr. Post is currently housed in the LaPlata County Jail subject to a detention ordered entered in September of last year. Because he is awaiting sentencing on an offense for which he has been found guilty, this Court may release Mr. Post if it finds "by clear and convincing evidence that [Mr. Post] is not likely to flee or pose a danger to the safety of any other person or the community…" 18 U.S.C. § 3143(a)(1).

14.     First, Mr. Post is not likely to flee. He has secured a location to reside in the greater southwestern Colorado area. A review of Mr. Post's criminal history shows that since his first interaction with courts in 1985, he has never failed to appear in Court. Doc. 31, ¶¶ 34-56. While the Presentence Investigation Report indicates that Mr. Post has two "detainers,"

---

[12] *Coronavirus in Colorado: Map and Case Count*, The New York Times (April 1, 2020) at https://www.nytimes.com/interactive/2020/us/colorado-coronavirus-cases.html#county

undersigned counsel consulted with the United States Probation Office and believes that neither

detainer would prevent Mr. Post's release.[13]

15.      And, any concern that the Court may have about flight can be mitigated with the

use of a GPS ankle monitor and a condition that he only leave home for essential activities (i.e.,

medical care) - a condition that would mirror the current stay-at-home order in place for

Colorado.[14]

16.      The evidence is also clear that Mr. Post is not a danger to any person in the

community. While he has a prior sex offense, that offense occurred nearly 17 years ago. He is

now much older and far less healthy; the deterioration of his physical condition makes any

violence unlikely. Further, courts around the country have found that the danger of COVID-19

rebuts the statutory presumption of dangerousness. See *United States v. Mclean,* No. 19-cr-380,

Dkt. No. (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts

and evidence that the Court previously weighed in concluding that Defendant posed a danger to

the community have not changed – with one exception. That one exception – COVID-19 –

however, not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. §3142(e),

but tilts the balance in favor of release.")

17.      Finally, the requested relief is far from unprecedented. Many federal judges are

listening to the experts, especially in cases involving detainees, like Mr. Post, who have

preexisting medical conditions that make them particularly vulnerable to COVID-19. Here are

just some recent, notable examples:

---

[13] The Presentence Investigation Report Indicate that Mr. Post has two "detainers." *See* Doc. 31 at 3. The first, a misdemeanor warrant out of New Mexico, is non-extraditable outside the state of New Mexico. The second is a "hold" from the Oregon Department of Corrections that would require Mr. Post to check in upon release; it is not a warrant for his arrest.

[14] "*Colorado Under Stay at Home Order- What You Can and Cannot Do under Gov. Polis' Official Order,*" CPR News (March 25, 2020) at https://www.cpr.org/2020/03/25/colorado-under-stay-at-home-order-what-you-can-and-cannot-do-under-governor-polis-official-order/.

a.   *United States v. Muniz*, Case No. 4:09-cr-199, Dkt. No. 578 (S.D. Tex. Mar. 30, 2020) (releasing defendant serving 188-month sentence for drug conspiracy in light of vulnerability to COVID-19: "[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection.").

b.   *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte order extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided.");

c.   *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19");

d.   *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic");

e.   *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail.");

f.   *United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19);

g.   *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility");

h.   *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic");

i.   *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (*sua sponte* releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis");

j.   *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and

"real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement");

k.    *Basank v. Decker*, No. 20-cv-2518 (S.D.N.Y. March 26, 2020) (releasing high-risk plaintiffs because "the nature of detention facilities makes exposure and spread of [coronavirus] particularly harmful.");

l.    *United States v. Grobman*, No. 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted after trial of fraud scheme in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate");

m.    *United States v. Kennedy*, No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020) (district court revokes Magistrate's detention order under 18 U.S.C. §3145(b) for defendant who had violated pretrial release because "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is *necessary* for Defendant to prepare his pre-sentence defense");

18.    For Mr. Post, the conditions within the BOP pose an unreasonable and unjustifiable risk of future harm from the pandemic, violating the Eighth Amendment's prohibition against cruel and unusual punishment, even if that harm has not yet come to pass. *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.' . . . . It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.").  Given his underlying health problems, Mr. Post's ongoing detention during the unprecedented public health crisis created by the COVID-19 pandemic results in a threat "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  *Helling*, 509 U.S. at 36.

19.     Ultimately, release is required to advance the "urgent priority" of decarceration, to protect both Mr. Post and the community, and to preserve Sixth Amendment rights in this perilous time.  See *United States v. Davis*, 20-cr-0009-EHL, Dkt.No. 21 (D. Maryland, March 30, 2020).

## CONCLUSION

For the reasons stated herein, Mr. Post asks this Court to release him under the provisions of 18 U.S.C. §3143(a) and respectfully requests an order granting him temporary release from detention pursuant to 18 U.S.C. §3142(i), to the home of his cousin Lena Nez and under any additional conditions of release deemed necessary, pending his sentencing.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Mary V. Butterton
MARY V. BUTTERTON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Mary_Butterton@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2020, I filed the foregoing **MOTION FOR RELEASE PENDING SENTENCING** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

>  Riley Josh Player, Assistant United States Attorney
>  Email: Riley_Player@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

>  Arden Post (via U.S. Mail)

>  s/ Mary Butterton
>  MARY BUTTERTON
>  Assistant Federal Public Defender
>  633 17th Street, Suite 1000
>  Denver, CO  80202
>  Telephone:  (303) 294-7002
>  FAX:  (303) 294-1192
>  Mary_butterton@fd.org
>  Attorney for Defendant